**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM<br>MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> 80MILLS LLC, d/b/a TACTICAL TITAN SUPPLY, and PEARSON GARDNER, <br><br> Defendants. | Civil Action No. 4:26-cv-00380-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER COPE, <br><br> Defendant. | Civil Action No. 2:26-cv-00033-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, <br><br> Defendants. | Civil Action No. 4:26-cv-00377-ALM |

| | |
|---|---|
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HANES TACTICAL, LLC, and DAMION TERRELL BENNETT, <br><br> Defendants. | Civil Action No. 4:26-cv-00369-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HARRISON GUNWORKS LLC, and TYLER HARRISON, <br><br> Defendants. | Civil Action No. 4:26-cv-00379-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MARS TRIGGER, LLC, and PETER BRENNEN, <br><br> Defendants. | Civil Action No. 2:26-cv-00030-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MISTER GUNS, LLC, THOMAS CARTER II, and BRANDI CARTER | Civil Action No. 2:26-cv-00056-ALM |

|  |  |
|---|---|
| Defendants. |  |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>STEVEN THANH NGUYEN, d/b/a POLYMER PEW,<br><br>        Defendant. | Civil Action No. 4:26-cv-00425-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>OPTICS PLANET, INC., d/b/a ECENTRIA,<br><br>        Defendant. | Civil Action No. 4:26-cv-00521-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>PISTOLCAP LIMITED COMPANY, d/b/a FRISCO GUNS, and MORDEKHAI HARROCH,<br><br>        Defendants. | Civil Action No. 2:26-cv-00053-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>        Plaintiffs, | Civil Action No. 2:26-cv-00055-ALM |

v.

PROSOURCE FIREARMS, LLC,

     Defendant.

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

     Plaintiffs,

v.

SUPERIOR FIREARMS OF TEXAS, LLC,

     Defendant.

Civil Action No. 2:26-cv-00058-ALM

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

     Plaintiffs,

v.

Z3 PRODUCTIONS, LLC, d/b/a Z3PRO,

     Defendant.

Civil Action No. 4:26-cv-00367-ALM

**ABC IP, LLC AND RARE BREED TRIGGERS, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING RESOLUTION OF FEDERAL CIRCUIT APPEAL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

    I.    Rare Breed Created the Market, Fought Years to Sell Its Products,
and Emerged Under a DOJ Settlement Conditioned Upon Enforcement
of Rare Breed's Patents ........................................................................................... 2

    II.    The Two Prior Preliminary-Injunction Rulings Now on Appeal ............................ 4

    III.    This MDL and the Consolidated Preliminary-Injunction Motion. ........................ 5

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT .................................................................................................................... 6

    I.    The Stay Defendants Seek Is Indefinite, and It Would Improperly
Let Ongoing, Irreparable Harm Deepen. ............................................................... 6

        A.    Defendants Seek an Indefinite Stay, Not a Brief One—and an
Indefinite Stay Is a Sub Silentio Denial of the Relief Plaintiffs
Urgently Seek. ............................................................................................ 7

        B.    The Harm a Stay Would Prolong Is Irreparable and Growing. ................. 8

    II.    A Stay Would Not Simplify the Issues, Because the Appeals Are Record-
Bound and the Only Overlapping Appeal Favors Plaintiffs. ............................... 10

        A.    The Appeals Are Reviewed for Abuse of Discretion and
Will Not Resolve the Merits on This Record ........................................... 11

        B.    *Partisan* Is the Wrong Template, and *Hoffman*—Having the
Only Real Overlap—Favors Plaintiffs. ................................................... 11

    III.    The Posture of This Litigation Confirms That a Stay Is Unwarranted. ............... 13

CONCLUSION ............................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC IP, LLC et al. v. Hoffman et al.*,
No. 1:25-cv-00389 (E.D. Tenn.)...................................................................... *passim*

*ABC IP, LLC et al. v. MaRs Trigger, LLC, et al.*,
No. 26-cv-00030, D.I. 38 (E.D. Tex. June 4, 2026) ...................................................1

*ABC IP, LLC et al. v. Mister Guns, LLC et al.*,
No. 26-cv-00056, D.I. 44 (E.D. Tex. June 4, 2026) ...................................................1

*ABC IP, LLC et al. v. Optics Planet Inc.*,
No. 4:26-cv-00521, D.I. 60 (E.D. Tex. June 4, 2026) ...................................... *passim*

*ABC IP, LLC et al. v. Peak Tactical, LLC*,
No. 2:26-cv-00018, D.I. 39 (D. Wyo. Feb. 13, 2026)...................................................4

*ABC IP, LLC et al. v. PistolCap Ltd. Co., et al.*,
No. 26-cv-00053, D.I. 41 (E.D. Tex. June 4, 2026) ...................................................1

*ABC IP, LLC et al. v. Prosource Firearms, LLC*,
No. 26-cv-00055, D.I. 41 (E.D. Tex. June 4, 2026) ...................................................1

*ABC IP, LLC et al. v. Superior Firearms of Texas*,
No. 26-cv-00058, D.I. 43 (E.D. Tex. June 4, 2026) ...................................................1

*ABC IP, LLC v. Peak Tactical LLC*,
No. 26-1527, D.I. 26 (Fed. Cir. Apr. 13, 2026) .......................................................12

*In re BRCA1-, BRCA2-Based Hereditary Cancer Test Pat. Litig.*,
3 F. Supp. 3d 1213 (D. Utah 2014)...........................................................................9

*Bushnell, Inc. v. Brunton Co.*,
673 F. Supp. 2d 1241 (D. Kan. 2009).......................................................................14

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)...................................................................................9

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)................................................................................10

*Garland v. Cargill*,
602 U.S. 406 (2024)....................................................................................................3

*Houston Prime Invs., Ltd. v. Cmty. Loan Servicing, LLC*,
No. 4:23-cv-0996, 2024 WL 3390616 (S.D. Tex. Apr. 24, 2024)..............................6

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Hybritech Inc. v. Abbott Lab'ys*,
    849 F.2d 1446 (Fed. Cir. 1988)..................................................................................14

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...........................................................................................6, 7, 8

*In re Rare Breed Triggers Pat. Litig.*,
    No. 4:26-md-03176-ALM, D.I. 7 (E.D. Tex. May 29, 2026)........................................ *passim*

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)...............................................................................9, 10

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005).........................................................................10

*Tinnus Enters., LLC v. Telebrands Corp.*,
    846 F.3d 1190 (Fed. Cir. 2017)...............................................................................10, 11

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014)....................................................................................9

*Trover Grp., Inc. v. Dedicated Micros USA*,
    No. 2:13-CV-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015)...............................6

*Wedgeworth v. Fibreboard Corp.*,
    706 F.2d 541 (5th Cir. 1983) .....................................................................................8

**INTRODUCTION**

Defendants[1] ask this Court to withhold preliminary injunctive relief for a year or more without ever deciding whether that relief is warranted. (*See ABC IP, LLC et al. v. Optics Planet Inc.*, No. 4:26-cv-00521, D.I. 60 (E.D. Tex. June 4, 2026) ("Mot.").[2]) In substance, Defendants ask for a denial of Plaintiffs' preliminary injunction by another route—one that hands Defendants the entire practical benefit of a denial (continued sales, no injunction, Plaintiffs' market eroding by the week) while sparing them the one thing an actual denial requires: a ruling. A stay of a preliminary-injunction motion is not a neutral pause. For as long as it lasts, it is a denial of preliminary relief in everything but name, entered without findings, without analysis of the four factors, and without any determination that Plaintiffs are not entitled to the relief they seek.

Defendants call this a "brief" stay (Mot. at 4, 9), but what they actually request is an open-ended suspension pegged to *two* Federal Circuit appeals—the slower of which is not expedited. On the Federal Circuit's own published timelines, appeals from a district court take a median of

---

[1] Only the following six Defendant groups filed Motions to Stay Preliminary Injunction Pending Resolution of Federal Circuit Appeals: (1) MaRs Trigger, LLC, and Peter Brennen; (2) Mister Guns, LLC, Thomas Carter II, and Brandi Carter; (3) Optics Planet, Inc. d/b/a Ecentria; (4) PistolCap Limited Company d/b/a Frisco Funs, and Mordekhai Harroch; (5) ProSource Firearms, LLC; and (6) Superior Firearms of Texas, LLC. The following six Defendant groups filed later Motions for Joinder: (1) 80 Mills LLC, d/b/a Tactical Titan Supply, and Pearson Gardner; (2) DNT LLC d/b/a Deez Nutz Tactical, and Zach Morrow; (3) Hanes Tactical, LLC, and Damion Terrell Bennett; (4) Harrison Gunworks LLC, and Tyler Harrison; (5) Steven Thanh Nguyen d/b/a Polymer Pew; and (6) Z3 Productions, LLC d/b/a Z3 Pro.

[2] The six moving Defendant groups filed near-identical Motions to Stay Preliminary Injunction Pending Resolution of Federal Circuit Appeals. *See ABC IP, LLC et al. v. Mister Guns, LLC et al.*, No. 26-cv-00056, D.I. 44 (E.D. Tex. June 4, 2026); *ABC IP, LLC et al. v. PistolCap Ltd. Co., et al.*, No. 26-cv-00053, D.I. 41 (E.D. Tex. June 4, 2026); *ABC IP, LLC et al. v. Prosource Firearms, LLC*, No. 26-cv-00055, D.I. 41 (E.D. Tex. June 4, 2026); *ABC IP, LLC et al. v. Superior Firearms of Texas*, No. 26-cv-00058, D.I. 43 (E.D. Tex. June 4, 2026); *ABC IP, LLC et al. v. Optics Planet Inc.*, No. 4:26-cv-00521, D.I. 60 (E.D. Tex. June 4, 2026); *ABC IP, LLC et al. v. MaRs Trigger, LLC, et al.*, No. 26-cv-00030, D.I. 38 (E.D. Tex. June 4, 2026). The motion filed by the defendants in the Optics Planet, Inc. case is representative of the motions filed by the other five defendant groups. Thus, for convenience, this brief includes citations only to the motion filed by the defendants in the Optics Planet, Inc. case.

well over a year from docketing to decision.  The "brief" stay Defendants describe is, in reality, a halt measured in years.

The premise that the appeals will simplify anything here is equally unfounded. Preliminary-injunction rulings are reviewed for abuse of discretion on the record before the court that entered them; no appellate outcome will resolve infringement, validity, or irreparable harm on *this* record.  The appeals prove the point themselves: the same patentee obtained opposite results in Wyoming and Tennessee on different records and different patents.  Of the two, only one—the *Hoffman* appeal—involves any patent at issue in the current preliminary-injunction motion, and Plaintiffs prevailed below.

The Court should deny the motion and set a schedule to decide Plaintiffs' Consolidated Motion for Preliminary Injunction on its merits.

<b><u>FACTUAL BACKGROUND</u></b>

**I.    Rare Breed Created the Market, Fought Years to Sell Its Products, and Emerged Under a DOJ Settlement Conditioned Upon Enforcement of Rare Breed's Patents.**

Plaintiff ABC IP, LLC ("ABC") owns a portfolio of patents covering what it has coined "forced reset" trigger technology—trigger components that allow a semi-automatic rifle to fire faster follow-up shots while still requiring a separate trigger pull for each shot.  (*In re Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176-ALM, D.I. 7 at 4 (E.D. Tex. May 29, 2026) ("P.I. Mot.").)[3]  ABC has exclusively licensed those patents to Plaintiff Rare Breed Triggers, Inc. ("RBT"), which designs, manufactures, and sells the trigger products that practice them.  (P.I. Mot. at 4.)  (ABC and RBT are referred to together as "Rare Breed.")  Rare Breed brought the first commercially available forced reset trigger, the FRT-15®, to market at the end of 2020.  (*In re*

---

[3]   In a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position so that the user may pull the trigger again, discharging the firearm, without having to first reduce pressure from the trigger.

2

*Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176-ALM, D.I. 7-2 at ¶ 7 (E.D. Tex. May 29, 2026) ("DeMonico Decl.").)  The FRT®4 line of trigger products is Rare Breed's entire business; it sells no other firearms or accessories, and it has marketed its FRT line as a premium, no-discount product.  (*Id.* at ¶¶ 24, 60.)

That business was nearly destroyed before it began.  About nine months after the FRT-15 launched, the ATF asserted that the product was a machine gun.  (*Id.* at ¶ 11.)  Rare Breed disputed that classification and filed declaratory-judgment actions; the Department of Justice responded with a civil enforcement action and, in 2023, obtained a preliminary injunction that shut down Rare Breed's operations and barred Rare Breed from enforcing its patents.  (*Id.* at ¶¶ 11–13; P.I. Mot. at 20.)

The landscape then shifted.  After the Supreme Court held in *Garland v. Cargill*, 602 U.S. 406 (2024), that the government had exceeded its authority in regulating bump stocks, the Northern District of Texas declared Rare Breed's products to be lawful semi-automatic triggers.  (DeMonico Decl. at ¶ 14.)  In May 2025, Rare Breed and the DOJ settled.  (*Id.*)  Under the settlement, Rare Breed's products may be sold lawfully, subject to conditions—including that Rare Breed will not develop forced reset triggers for handguns, will promote the safe and responsible use of its products, and will enforce its patents against infringing products.  (*Id.* at ¶ 15.)  The settlement thus did two things at once: it lifted the bar that had prevented Rare Breed from enforcing its patents, and it affirmatively obligated Rare Breed to do so.

Rare Breed has enforced its patents whenever permitted.  Before the DOJ injunction, Rare Breed obtained a preliminary injunction and then a consent judgment and permanent injunction

---

[4] Plaintiff Rare Breed Triggers, Inc., is the exclusive licensee of various registered and applied-for trademarks, covering its line of forced reset trigger products, including FRT® (Reg. No. 8187914), FRT-15® (Reg. No. 7004418), and FRT-MR3™ (App. No. 99714625).

against an earlier infringer. (P.I. Mot. at 20–21.) In March and April 2025, Rare Breed sent cease-and-desist letters to many of the Defendants. (DeMonico Decl. at ¶ 34.) After the May 2025 settlement lifted the enforcement bar, Rare Breed began filing suit in June 2025, and has since filed approximately eighty infringement actions. (*Id*. at ¶ 17.) By the time of the settlement, Rare Breed had already identified roughly seventy companies selling infringing forced reset trigger products, and that number has continued to grow on a near-daily or weekly basis. (*Id.* at ¶ 58.)

The accused products at issue in the preliminary-injunction motion are three cam-based devices that compete directly with Rare Breed's line of products—the Super Safety, the ARC-Fire, and the Atrius Selector—sold by the 13 Defendant groups at a fraction of Rare Breed's prices: while Rare Breed prices its products from roughly $450 to $620, Defendants sell the accused products for as little as $20. (P.I. Mot. at 1–2, 31.)

## II.    The Two Prior Preliminary-Injunction Rulings Now on Appeal.

Two of Rare Breed's enforcement actions produced preliminary-injunction rulings that are now before the Federal Circuit.

In the first, Rare Breed sued the original publisher of the "Super Safety" design files in the Eastern District of Tennessee. (*See ABC IP, LLC et al. v. Hoffman et al.*, No. 1:25-cv-00389 (E.D. Tenn.).) After a three-day evidentiary hearing, the court entered a preliminary injunction on February 11, 2026, finding the Super Safety likely infringes claim 15 of U.S. Patent No. 12,038,247 ("the '247 Patent") and claim 1 of U.S. Patent No. 12,031,784 ("the '784 Patent")—patents also asserted in this case—crediting the testimony of Rare Breed's technical expert, and finding that every preliminary-injunction factor favored Rare Breed. (P.I. Mot. at 24–25.) That injunction remains in force, and it is on appeal at the Federal Circuit, No. 26-1775.

In the second—the "*Partisan* action"—the District of Wyoming denied a preliminary injunction on February 13, 2026. (*See ABC IP, LLC et al. v. Peak Tactical, LLC*, No. 2:26-cv-

4

00018, D.I. 39 (D. Wyo. Feb. 13, 2026).) The *Partisan* action differs from this case in two respects Defendants' motion does not surface—it concerns a different accused product and it asserts a different family of patents. (P.I. Mot. at 8 n.6.) The Wyoming court's denial rested primarily on what it found, after only a short hearing, to be an insufficient evidentiary record on irreparable harm and on a substantial question of validity directed to those other patents. (*See ABC IP, LLC et al. v. Optics Planet Inc.*, No. 4:26-cv-00521, D.I. 60-1 (E.D. Tex. June 4, 2026) ("*Partisan* P.I. Order").) Rare Breed has appealed. As of this filing the appeal has not been scheduled for argument, and both sides have identified conflicts for October and November 2026. (Ex. 1.)

III.     **This MDL and the Consolidated Preliminary-Injunction Motion.**

As Rare Breed's enforcement actions multiplied across the country, the Judicial Panel on Multidistrict Litigation centralized them in this District, creating this MDL on April 2, 2026. (P.I. Mot. at 22.) The Panel did so specifically to eliminate duplicative discovery and to "prevent inconsistent pretrial rulings—especially regarding claim construction, patent validity, and the appropriateness of injunctive relief," observing that too narrow a centralization "may lead to inconsistent injunction decisions" across courts. (*Id.*)

On May 29, 2026, Rare Breed filed its Consolidated Motion for Preliminary Injunction against the 13 Defendant groups, seeking to enjoin continued sales of certain accused products. (P.I. Mot.) The patents asserted against these Defendants include the '247 and '784 Patents, as well as U.S. Patent Nos. 12,578,159 ("the '159 Patent"), 12,529,538 ("the '538 Patent"), and 12,636,403 ("the '403 Patent")[5]; the motion seeks preliminary relief on that basis. (*Id.* at 2 n.2.) Rather than respond to the motion, Defendants—through a coordinated set of substantively

---

[5] Plaintiffs have sought to amend the Complaints for all 13 defendant groups against whom the preliminary injunction is sought. Seven of the 13 seek to add only the newly issued '403 Patent; three seek to add the '159, '538, and '403 Patents; one seeks to add the '784 and '403 Patents; and two seek to add all four.

5

identical motions—ask the Court to stay all briefing and adjudication of the motion until the Federal Circuit decides both the *Partisan* and *Hoffman* appeals. (Mot. at 1–2.) Alternatively, in concurrently-filed motions, Defendants ask this Court to hold any ruling on the P.I. Motion in abeyance, or to extend all deadlines to achieve the same effect. (*See, e.g.*, *ABC IP, LLC et al. v. Optics Planet Inc.*, No. 4:26-cv-00521, D.I. 59 (E.D. Tex. June 4, 2026); *id.*, D.I. 61 (June 4, 2026).)

Rare Breed now responds to Defendants' motion to stay pending Federal Circuit appeals.

## LEGAL STANDARD

A stay is not a matter of right; it is an exercise of the Court's discretion, "incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts in this District weigh "(1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will simplify issues in question in the litigation." *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015). Where a stay is sought pending an interlocutory appeal, courts have found such a stay appropriate where the issues on appeal are genuinely "intertwined with issues that remain pending in the district court." *Houston Prime Invs., Ltd. v. Cmty. Loan Servicing, LLC,* No. 4:23-cv-0996, 2024 WL 3390616, at *2 (S.D. Tex. Apr. 24, 2024).

## ARGUMENT

### I. The Stay Defendants Seek Is Indefinite, and It Would Improperly Let Ongoing, Irreparable Harm Deepen.

The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work

6

damage to some one else." *Landis*, 299 U.S. at 255.  And a stay must be "so framed in its inception that its force will be spent within reasonable limits."  *Id.* at 257.  Defendants' requested stay fails on both counts: it has no end in sight and it would inflict ongoing, irreparable harm on Plaintiffs.

> **A.** **Defendants Seek an Indefinite Stay, Not a Brief One—and an Indefinite Stay Is a Sub Silentio Denial of the Relief Plaintiffs Urgently Seek.**

Defendants repeatedly describe their request as a "brief stay" that will result in a "relatively short" delay.  (Mot. at 4, 9–10.)  That characterization cannot be reconciled with what they actually ask for: a stay that lasts until the Federal Circuit decides **both** the *Partisan* and *Hoffman* appeals.  The Federal Circuit's own statistics show how long that is.  For appeals arising from a district court and decided after argument or submission, the median time from docketing to disposition is well over a year, and it has been rising in recent years.[6]  Those are medians measured from docketing; and, by definition, half of such appeals take longer.

Nothing about these two appeals suggests they will beat that timeline.  The *Partisan* appeal is fully briefed, but it has not been scheduled for argument, and the parties have flagged conflicts running through November 2026.  (*See* Ex. 1.)  The *Hoffman* appeal is further behind: it is not expedited[7], and the opening brief is not due until July 6, 2026, so briefing will not close until the fall and a decision will not issue until well into 2027.  (*See* Ex. 2.)  Because Defendants seek a stay pending *both* appeals, the operative date is the later one.  A stay that runs until both appeals are resolved is, realistically, a stay of a year or more.

That is precisely the kind of open-ended stay the Fifth Circuit forbids.  Before entering a stay pending another proceeding, a court "must carefully consider the time reasonably expected

---

[6] CAFC, Median Disposition Time for Cases Terminated After Hearing or Submission, FY2024 (appeals from a U.S. district court), *available at* https://www.cafc.uscourts.gov/wp-content/uploads/reports-stats/FY2024/MedianDispositionTime-Merits.pdf.

[7] Defendants suggest that Rare Breed Could ask for this appeal to be expedited, but provide no reason why Rare Breed, as the appellee, would do so.

for resolution of the other case," and stay orders "will be reversed when they are found to be immoderate or of an indefinite duration." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (internal quotation marks and alterations omitted). In *Wedgeworth*, for example, the Fifth Circuit reversed a stay tied to the completion of separate proceedings of uncertain length, holding that the movants had not shown a "clear case of hardship or inequity" sufficient to offset the harm that delay would inflict on the plaintiffs. *Id*. at 544–46. A stay keyed to the resolution of two interlocutory appeals, on timelines no party controls, is immoderate in exactly this sense.

The indefiniteness matters all the more because of *what* would be stayed. A preliminary injunction is a request for urgent relief against present, ongoing harm. To stay the motion is therefore not a neutral scheduling deferral. For the entire length of the stay, it produces the precise practical result of a denial—Defendants keep selling, no injunction issues, and the market Plaintiffs built and seek to protect erodes further—while withholding everything an actual ruling on the motion would provide: findings, an analysis of the four factors, and a determination of whether Plaintiffs are entitled to relief. In effect, Defendants ask the Court to deny preliminary relief for a year or more without deciding whether that relief is warranted. If preliminary relief is to be withheld while infringement continues, that decision should be made on the merits—by adjudicating the motion—not deferred indefinitely by a stay that resolves nothing.

## B.      The Harm a Stay Would Prolong Is Irreparable and Growing.

The hardship a stay would inflict is not speculative; it is occurring now. That is dispositive under *Landis*, because the "fair possibility" that a stay "will work damage" to Plaintiffs is, here, a certainty that grows by the week. *Landis*, 299 U.S. at 255.

***Lost market share in a small, durable-goods market***. Rare Breed held effectively the entire commercially available forced reset trigger market at launch; this is no longer the case. (DeMonico Decl. at ¶ 75.) These are durable products—a customer typically buys a single trigger

8

for the life of a rifle. (*Id.* at ¶¶ 73–74.) A sale lost to an infringer during a year-long stay is not a sale deferred; it is a customer gone, in many cases for good. The Federal Circuit has squarely held that lost market share and lost customer access in a small market of direct competitors is irreparable—and that the loss is no less irreparable because the patentee occupies a niche. *See Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170–71 (Fed. Cir. 2014) (reversing denial of preliminary injunction where any sale by the competitor was a lost customer in a small market); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1150–55 (Fed. Cir. 2011) (irreparable harm from direct competition, lost market share, and price erosion).

*Price erosion that hardens into the market's baseline*. Rare Breed built a premium, no-discount brand and held the FRT-15L3® at $499. Facing Defendants' deeply discounted infringing products, it was forced to cut that price to $450 in August 2025 and to open a dealer program earlier and at lower margins than planned. (DeMonico Decl. at ¶¶ 60, 77.) Once a market internalizes a lower reference price, the discount does not reverse when the infringement stops; the lower expectation persists, and any later effort to restore premium pricing meets "daunting resistance." *In re BRCA1-, BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 3 F. Supp. 3d 1213, 1251 (D. Utah 2014); *see Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (price erosion and loss of goodwill irreparable where customers bought from the infringer at steep discounts and loss of sales could not be effectively measured). A stay does not pause that dynamic—it extends the period over which the market relearns Rare Breed's products as cut-rate goods.

*Reputational harm and loss of innovator status*. The clearest irreparable harm is the one damages can least touch. Defendants and the broader infringer community are not merely underselling Rare Breed; they are using the undercut to recast Rare Breed's brand. The Federal

9

Circuit recognizes that a patentee forced to compete against infringing copies suffers harm to "its reputation as an innovator" and to the "brand distinctiveness" that the patent right protects—harm that exists even absent consumer confusion and that is "often irreparable." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013); *accord Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1208 (Fed. Cir. 2017) (affirming E.D. Tex. finding that infringement "tarnishes" the patentee's "status as the innovator").

That is certainly the case here. The infringement enables Defendants to sell at a fraction of Rare Breed's price; the undercut simultaneously erodes Rare Breed's pricing and fuels a narrative, spread across the firearms community, that recasts the company that pioneered and lawfully patented this technology as a greedy incumbent, even as buyers are steered to cheaper infringing substitutes at the point of purchase. (DeMonico Decl. at ¶ 66.)

***The harm cannot be cured by money later***. Finally, the premise underlying any "stay now, recover later" theory fails on this record. As Plaintiffs' motion demonstrates, the Defendants are overwhelmingly newly formed entities with no surfaced assets, whose maximum per-unit profit cannot even exceed Rare Breed's per-unit loss—so a damages judgment is likely uncollectible. (P.I. Mot. at 34–35.) *See Robert Bosch*, 659 F.3d at 1155–56 (infringer's likely inability to satisfy a judgment supports irreparable harm). What Rare Breed loses during the stay, it loses for good.

## II. A Stay Would Not Simplify the Issues, Because the Appeals Are Record-Bound and the Only Overlapping Appeal Favors Plaintiffs.

A stay is warranted only where resolution of the other proceeding will likely narrow the issues in the pending case and assist in the determination of the questions of law involved. *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 663 (E.D. Tex. 2005) (denying motion for stay in part due to low likelihood that parallel reexamination proceedings would simplify issues in case). Defendants cannot make that showing, because the appeals will not

10

resolve the questions before this Court—and the one appeal that overlaps with this motion already points Plaintiffs' way.

### A. The Appeals Are Reviewed for Abuse of Discretion and Will Not Resolve the Merits on This Record.

The Federal Circuit reviews the grant or denial of a preliminary injunction under the law of the regional circuit, for abuse of discretion—reviewing factual findings for clear error and legal conclusions de novo. *See Tinnus*, 846 F.3d at 1202–03. That standard is fatal to Defendants' simplification theory. An affirmance in *Partisan* would establish only that the District of Wyoming did not abuse its discretion *on the record before it*—not that Plaintiffs cannot prove infringement, validity, or irreparable harm on the materially different and fuller record presented here. An affirmance in *Hoffman* would likewise confirm only that the Eastern District of Tennessee acted within its discretion. Neither appeal will announce a merits rule that decides this P.I. Motion; the abuse-of-discretion standard exists precisely to preserve, not displace, the district court's case-specific judgment.

Defendants suggest the appeals will resolve "overlapping issues" of irreparable harm, the balance of equities, and public interest that are "not product-specific." (Mot. at 7.) Not so. Each of those factors turns on the particular record—the particular parties, products, pricing, market evidence, and equities—before the deciding court. The clearest proof is that the two appeals arose from *opposite* outcomes: the same patentee was denied an injunction in Wyoming and granted one in Tennessee, on different records and different patents.

### B. *Partisan* Is the Wrong Template, and *Hoffman*—Having the Only Real Overlap—Favors Plaintiffs.

Defendants build their motion on *Partisan*, but *Partisan* has little to do with the P.I. Motion before this Court, and the appeal that actually overlaps Plaintiffs' P.I. Motion cuts the other way.

11

***Partisan* involves a different product and a different patent family**.  The *Partisan* action concerns the cassette-style "Disruptor," which Plaintiffs have not included in their P.I. Motion. (Mot. at 7; P.I. Mot. at 1 n.1.)  And it asserts U.S. Patent Nos. 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent")—*none* of which is at issue in this motion, which rests on the '247, '159, '538, '784, and '403.  (P.I. Mot. at 2 n.2; *ABC IP, LLC v. Peak Tactical LLC*, No. 26-1527, D.I. 26 at 6 (Fed. Cir. Apr. 13, 2026).)  The "substantial question of validity" the Wyoming court identified was therefore directed to a different patent family entirely. (*Partisan* P.I. Order at 27.)  On the patents that matter here, the overlap with *Partisan* is essentially zero.

The *Partisan* denial also turned on an evidentiary gap that this record fills.  The Wyoming court denied relief because of what the patentee there failed to prove: it found no evidence of an actual price drop, no sales data before or after the competitor's entry, no supporting market analysis, and no evidence of an established dealer network, and it treated the supporting expert declaration as conclusory.  (*See generally Partisan* P.I. Order.)  Rare Breed's record here supplies precisely those elements—a dated and quantified price reduction, market-share evidence, a documented dealer program, and the economic analysis of Mr. Eichmann. (DeMonico Decl. at ¶¶ 59, 75, 77; *In re Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176-ALM, D.I. 7-1 at ¶ 7 (E.D. Tex. May 29, 2026) at ¶¶ 56–58 (providing summary of Mr. Eichmann's conclusions based on his analysis).)  An affirmance that the Wyoming court acted reasonably *on its record* says nothing about a record built to cure the very deficiencies that decided *Partisan*.  Such an affirmance also says nothing about Plaintiffs' new arguments, including those related to the '403 Patent, which are not at issue in the *Partisan* case.

The single appeal involving patents at issue here is *Hoffman*. After a three-day evidentiary hearing, the Eastern District of Tennessee found the Super Safety likely infringes claim 15 of the '247 patent and claim 1 of the '784 patent—patents asserted here—credited the testimony of Mr. Luettke, the same expert offering analysis in support of this motion, found no substantial question of infringement or validity, and held that every preliminary-injunction factor favored Rare Breed. (P.I. Mot. at 24–25.) That injunction is in force. Defendants thus ask the Court to await "guidance" on issues for which it already has an on-point, favorable ruling from a court that actually examined two of these patents and this expert. A stay to await guidance the Court largely possesses is not simplification; it is delay for its own sake.

### III.    The Posture of This Litigation Confirms That a Stay Is Unwarranted.

The remaining considerations—the stage of the litigation and the conservation of judicial resources—reinforce the conclusion that the motion should be denied.

Defendants argue that no schedule has been entered, no discovery has occurred, and the case is in its infancy. (Mot. at 11.) But a preliminary injunction exists to address harm *before* full adjudication; the absence of a docket control order or completed discovery is the ordinary setting in which such motions are heard, not a reason to defer them. The "early stage" of a case is what makes preliminary relief available—and, where harm is ongoing and irreparable, urgent. Treating the case's early posture as a reason to withhold preliminary relief would stand the remedy on its head: it would mean the earlier and more timely a patentee seeks to stop ongoing infringement, the weaker its claim to be heard. That is not the law.

Nor did Plaintiffs delay. To the extent Defendants suggest Plaintiffs slept on their rights (Mot. at 10–11), the chronology refutes it. Rare Breed was legally barred from enforcing its patents during the DOJ's enforcement action and could not assert the '247 and '784 patents— though issued in July 2024—without risking contempt. (DeMonico Decl. at ¶¶ 11–14.) Delay

13

that is explained by genuine litigation or regulatory constraints does not defeat irreparable harm. *See Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) (delay "does not preclude . . . a determination of irreparable harm" and may be excused by the patentee's particular circumstances); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263–64 (D. Kan. 2009) (delay excused where explained by prior litigation and a prudent enforcement approach).  In March and April 2025, Rare Breed sent cease-and-desist letters to many of the Defendants.  (DeMonico Decl. at ¶ 34.)  And once the May 2025 settlement lifted the bar, Rare Breed promptly filed lawsuits beginning in June 2025 (with approximately 80 cases filed to date), sought preliminary-injunction litigation in the lead cases, and brought this consolidated motion once the MDL formed in April 2026.  Rare Breed has enforced its rights whenever permitted, including by obtaining a preliminary injunction and consent judgment against an earlier infringer.  (P.I. Mot. at 20–21.)  The interval Defendants point to is measured in months, fully explained, and far shorter than delays courts routinely hold no bar to relief.  *See Hybritech*, 849 F.2d at 1457; *Bushnell*, 673 F. Supp. 2d at 1263.

## CONCLUSION

The stay Defendants seek is indefinite; the harm it would prolong is irreparable and growing; and the appeals will not resolve the issues on this record.  For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion and enter a schedule for the adjudication of Plaintiffs' Consolidated Motion for Preliminary Injunction.

 DATED: June 18, 2026                    Respectfully submitted,

                                         /s/ Matthew A. Colvin
                                         Matthew A. Colvin
                                         Texas Bar No. 24087331
                                         Carl E. Bruce
                                         Texas Bar No. 24036278
                                         **FISH & RICHARDSON P.C.**
                                         1717 Main Street, Suite 5000

14

Dallas, TX 75201
E-mail: colvin@fr.com
      bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy *(admitted pro hac vice)*
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 18, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.


/s/ Matthew A. Colvin
Matthew A. Colvin